IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>PRINCESS EZIYI and CLINTON CHUKWUDI UCHENDU,<br><br>    Defendants. | **MEMORANDUM DECISION & ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT THREE FOR LACK OF VENUE**<br><br>Case No. 2:22-cr-00160-JNP-2<br><br>District Judge Jill N. Parrish |

Before the court is Defendant Clinton Uchendu's Motion to Dismiss Count Three of the Third Superseding Indictment for Lack of Venue, ECF No. 105 ("Motion"). Having considered the arguments submitted by the parties and the relevant law, the court **DENIES** Mr. Uchendu's Motion, subject to the considerations discussed below.

### BACKGROUND

On May 4, 2022, a grand jury indicted Princess Eziyi for 18 U.S.C. § 1956(h) conspiracy to commit money laundering and 18 U.S.C. § 1341 mail fraud. ECF No. 5. On May 25, 2022, the Government filed a Superseding Indictment, adding Mr. Uchendu as a codefendant. *See* ECF No. 6. On June 21, 2023, the Government filed a Second Superseding Indictment, ECF No. 76, adding a third count against Mr. Uchendu under 18 U.S.C. § 1960 for "knowingly conduct[ing], control[ling], manag[ing], supervis[ing], direct[ing] or own[ing] all or part of an unlicensed money transmitting business without registering that business as required by 31 U.S.C. § 5330." *Id.* at 10.

On August 30, 2023, the Government filed a Third Superseding Indictment, ECF No. 102 ("Third Superseding Indictment"), through which it clarified that the unlicensed money transmitting business that gives rise to the 18 U.S.C. § 1960 charge "consisted of a network of participants who employed a variety of methods to transmit the proceeds" who were mostly located in Utah County, Utah. *Id*. ¶ 25.

Through the Motion now before this court, Mr. Uchendu moved to dismiss Count Three for improper venue. Argument on the Motion was held on September 12, 2023. *See* ECF No. 113. After oral argument, Mr. Uchendu was given opportunity to file a supplemental memorandum in support of his Motion on the issue of venue under 18 U.S.C. § 2, *see* ECF No. 122, to which the government subsequently responded. ECF No. 123.

## LEGAL STANDARD

The Constitution provides that criminal trials shall be held in the state in which the crime occurred. U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment guarantees criminal defendants the right to a jury trial in the district where the crime was committed. U.S. CONST. amend. VI. Rule 18 of the Federal Rules of Criminal Procedure protects this right by requiring the Government "to prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18; *United States v. Cabrales*, 524 U.S. 1, 5 (1998) (quoting *United States v. Pirani*, 109 F.3d 471, 472 (8th Cir. 1997)) ("Both Rule 18 of the Federal Rules of Criminal Procedure and the Constitution require that a person be tried for an offense where that offense is committed.").

The issue of venue is more than a procedural one—it has constitutional and public policy dimensions. *United States v. Ryan*, 894 F.2d 355, 359 (10th Cir. 1990); *United States v. Lewis*, 768 F. 3d 1086, 1090 (10th Cir. 2014). The crucial inquiry for venue analysis is to determine where the alleged crime was committed. *United States v. Cores*, 356 U.S. 405, 407 (1958). "[T]rial may be

held where *any part* of a crime can be proved to have been done." *Smith v. United States*, 143 S. Ct. 1594, 1603 (2023) (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999)) (cleaned up and emphasis added).

Although venue is a question of fact to be decided by the jury, whether there has been sufficient evidence to justify a finding on venue is a question of law for the court. *United States v. Foy*, 641 F.3d 455, 466 (10th Cir. 2011). Defendants must raise venue objections during the pretrial stage "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(A)(i). Improper venue is a basis for dismissal of a charge. *Id.*

At the pretrial stage, "it suffices for the government to allege with specificity that the charged acts support venue[.]" *United States v. Villalobos-Macias*, 280 F. Supp. 3d 1211, 1216 (D.N.M. 2017) (quoting *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988)). In reviewing a pretrial motion to dismiss, the court accepts all well-pleaded factual allegations in the indictment as true and makes all reasonable inferences of fact from the indictment in the light most favorable to the Government. *See United States v. Sampson*, 371 U.S. 75, 78–79 (1962); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1267 (10th Cir. 2005).

## ANALYSIS

The starting point in this court's venue analysis is the Supreme Court's counsel that close calls in the question of venue (regarding matters of law) generally ought go to the Defendant, *United States v. Johnson*, 323 U.S. 273, 276 (1944) ("If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it."), which some circuits have interpreted as a general mandate to construe

3

venue narrowly. *See United States v. Ramirez*, 420 F.3d 134, 146 (2d Cir. 2005); *United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014); *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012); *United States v. King*, 259 F. Supp. 3d 1267, 1281 (W.D. Okla. 2014).

Generally, venue "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Cabrales*, 524 U.S. at 5. Nevertheless, determining where a crime is committed is "not always an easy task." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011). "The terms of the statute dictate the nature and acts that constitute a crime." *Id.* In particular, "it is often helpful to look to the verb or verbs used in the criminal statute to determine where the crime was committed." *Id.*; *Ryan*, 894 F.2d at 360. While the Supreme Court has counseled against too-strictly hewing to the "verb test" in determining *locus delicti*, *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), the Tenth Circuit has since reiterated that "it is often helpful to look to the verb or verbs used in the criminal statute to determine where the crime was committed." *Smith*, 641 F.3d at 1207.

I.     18 U.S.C. § 1960

18 U.S.C. § 1960 imposes criminal liability upon "[w]hoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business[.]"[1] Thus, the dispositive question before the court is whether the government, through

---

[1] An unlicensed money transmitting business is a money transmitting business which affects interstate or foreign commerce in any manner or degree and:

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

4

the Third Superseding Indictment, has alleged sufficient facts to support a finding by a jury that venue is proper in the District of Utah against Mr. Uchendu for a violation of 18 U.S.C. § 1960 by virtue of Mr. Uchendu's alleged "conduct[ing], control[ling], manag[ing], supervis[ing], direct[ing] and own[ing] all or part of an unlicensed money transmitting business without registering that business" [2] or by aiding and abetting these activities. 18 U.S.C. § 2(a).[3]

Defendant would have this court center its venue analysis on where Mr. Uchendu personally acted in such a way as to conduct, control, manage, direct, or own an unlicensed money transmitting business. Motion at 3; *cf. id.* at 4 ("[The indictment] fail[s] to allege Uchendu committed any act proscribed by the text of the statute in the District of Utah. . . . [The indictment] fails to allege Uchendu acted in Utah . . . . [The indictment] fail[s] to allege Uchendu committed any act within the statute in Utah."). Because Mr. Uchendu himself was only present in Georgia,

---

      (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

      (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

18 U.S.C. § 1960(b)(1). "Money transmitting" is defined as "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier[.]" *Id.* § 1960(b)(2).

[2] The court notes that this is an unusual case. Typically, the Government reserves § 1960 charges for "non-bank financial institutions like wire remitters and currency exchangers." *United States v. $215,587.22 in United States Currency*, 306 F. Supp.3d 213, 215 (D.D.C. 2018) ("Rarely, if ever, have they been applied to ostensible nonfinancial professional-services firms that also transfer funds for clients.").

[3] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

Mr. Uchendu's actions, even if directed *towards* Utah, are "based in Georgia," *id.* at 5, and venue is proper only in Georgia. That is, whenever Mr. Uchendu acted in such a way as to conduct, control, manage, direct, or own, such actions began and ended in Georgia. The crux of Defendant's argument is that the Third Superseding Indictment, like the Second Superseding Indictment, "fails to allege Uchendu committed the specific acts proscribed by statute in the District of Utah." Motion at 2.[4]

### A. Continuing Offense

The government, on the other hand, offers a number of arguments as to why the offense proscribed in 18 U.S.C. § 1960 should be read broadly enough to find that venue lies in this district. The government begins its argument with the assertion that the offense of conducting a business is, "by [its] nature, a continuing offense." Motion at 6. However, this assertion, and the layers of argument built on top of it, are founded on a failure to appreciate the doctrinal complexity underlying continuing offenses. This is because "continuing offense" analysis is context-sensitive and comes in at least two distinct flavors—determining whether an offense is a continuing one for *venue* purposes is very different than a similar determination under *statute of limitations* purposes, as the Tenth Circuit has made clear. *See United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) ("[T]he continuing offense analysis for venue purposes is obviously different from the continuing offense analysis for statute of limitations.") (cleaned up).[5]

---

[4] This is, in fairness, a plain language reading of the statute that considers where Mr. Uchendu acted in a culpable manner. *Cabrales*, 524 U.S. at 5. That is, those things that he did in violation of 18 U.S.C. § 1960, he did in Georgia. It is also consonant with *Johnson* and federal courts' general prerogative not to over-read venue and therefore to closely police the constitutional mandate of the Sixth Amendment.

[5] But this is not to say that the two aren't, at times, mutually relevant. While statute-of-limitations analysis under the continuing-offense doctrine is clearly "not dispositive" in venue determinations,

The government, in its citation to *United States v. Useni*, 516 F.3d 634, 655-56 (7th Cir. 2008) and *United States v. Wellington*, 2022 U.S. Dist. LEXIS 231819, at *4 (D.N.M. Dec. 27, 2022), for the proposition that "conducting a business [] is, by nature, a continuing offense," ECF No. 106 at 6, seems to have overlooked this distinction. In fact, much of the government's subsequent argument follows from the initial, unstated assumption that continuing offense calculus for *both* statute-of-limitation purposes and venue purposes in the case of conducting a business is the same. *See id*. at 6-9. And while the government has certainly made a strong case that § 1960's proscription of certain activities related to unlicensed money transmission businesses may trigger the continuing-offense doctrine for statute-of-limitations purposes, the venue determination must be carefully considered separately, and does not immediately follow from the logic of the government's argument as presented.[6]

---

*Reitmeyer*, 356 F.3d at 1324, "these cases cannot be entirely ignored." *United States v. Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003); *cf. Toussie v. United States*, 397 U.S. 112, 120 n.16 (1970) (considering briefly how venue determinations under the continuing-offense doctrine may differ from the statute of limitations analysis otherwise provided in that opinion). In some cases, identifying continuing offenses for venue purposes versus statute-of-limitations purposes is simple—for example, where 18 U.S.C. § 3237(a) provides that "the use of the mails" is a continuing offense for venue purposes, the Tenth Circuit held that it was not necessarily a continuing offense for statute of limitations purposes. *See Reitmeyer*, 356 F.3d at 1323. In this case, the court concludes that the thrust of the government's argument regarding the continuing offense doctrine is inapposite as to venue.

[6] However, to the government's advantage, because this court hesitates to blur the line between the continuing-offense doctrine for statute-of-limitations and venue purposes, it declines to apply the clear statement rule otherwise at play in statute-of-limitations continuing-offense analysis. In *Reitmeyer*, for example, the Tenth Circuit demanded particularly explicit language in the terms of the statute to support a finding that the offense in question was a continuing offense for timeliness purposes—the *Reitmeyer* court looked to the "explicit language" of the statute and concluded that "[i]f Congress intended the execution of a scheme to be a continuing offense, it could have clearly stated so." *Reitmeyer*, 356 F.3d at 1322 (citing *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003)) (cleaned up).

Rather, the proper analysis under the continuing violation doctrine in this case is found in the statutory language of 18 U.S.C. § 3237(a), under which such an offense "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."[7] If the crime "began, continued, and [was] completed" only in one district, it must be prosecuted in that district." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011) (citing *Cabrales*, 524 U.S. at 8) (cleaned up).

Thus, again turning to the text of § 1960, the court considers the nature of the crime alleged and the location of the act or acts that constituted it, from which it might determine the appropriate *locus delicti*. *Smith*, 641 F.3d at 1207. *Smith* makes clear that even if a proscribed act has *effects* in other jurisdictions, venue is proper only where such acts begin and end. *Id*. at 1208.[8] Through *Smith*, the Tenth Circuit explicitly considered and rejected the "substantial contacts" test in determining venue. *Id*. at 1208. Thus, this court is bound to find venue *only* where the Defendant

---

[7] 18 U.S.C. § 3237(a) continues: "Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves."

[8] Thus, venues lies for the making of a false statement, even if in relation to an investigation ongoing in another state, only where such statement was actually made. In other words, the Tenth Circuit searches for where the crime is committed—that is, where the Defendant acts—rather than where substantial contacts or effects are had or experienced. *Smith* also affirms the holding in the otherwise-vacated *United States v. Wiles*, 102 F.3d 1043, 1064 (10th Cir. 1996), *vacated*, 522 U.S. 945, that "a false tax return is made both where the form itself is completed and where it is filed with the IRS." *Smith*, 641 U.S. at 1208. Similarly, in *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981), the Tenth Circuit held that "[t]he proper venue for the offense of making false statements to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank."

"<u>committed</u>" the crime, *id.* (emphasis in original), not where the effect of the crime's commission was felt.

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Turning to the plain language of the statute, the court again reiterates that criminal punishment under 18 U.S.C. § 1960 may only be meted out upon those who "knowingly conduct[], control[], manage[], supervise[], direct[], or own[] all or part of an unlicensed money transmitting business." 18 U.S.C. § 1960(a). It is these actions, and these actions only,[9] for which Mr. Uchendu is culpable under the statute, and venue lies only in such district where Mr. Uchendu can be shown to have *done* such conducting, controlling, managing, supervising, directing, or owning.

---

[9] While § 1960(b) refers to the "transportation or transmission of funds," such actions are used only to define the appropriate boundaries of the term "unlicensed money transmitting business." The statute does not facially proscribe such transportation or transmission as to provide venue where such transportation or transmission occurs, except insofar as such transportation or transmission constitutes conducting, controlling, managing, supervising, directing, or owning that was begun, continued, or completed in the District of Utah. The court notes that § 1960(b) defines unlicensed money transmitting businesses as "affect[ing] interstate or foreign commerce." At first blush, this might seem to implicate 18 U.S.C. § 3237(a), which states that "[a]ny offense involving the use of the mails, *transportation in interstate or foreign commerce*, or the importation of an object or person into the United States is a continuing offense." However, § 1960(b)(1)(C) defines unlicensed money transmitting businesses as those that affected interstate or foreign commerce in any manner *and* "otherwise involve[] the transportation *or* transmission of funds[.]" The disjunctive "or" thus differentiates between the transportation and transmission of funds—only one of which is clearly within 18 U.S.C. § 3237(a)'s ambit. Even if the transmission of funds is a continuing offense under 18 U.S.C. § 3237(a), however, as some out-of-circuit authority holds, *see, e.g.*, *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), such transmission is not facially proscribed by § 1960. Again, transmission defines the nature of the business, rather than the punishable activity under the statute. Instead, transmission of funds is only forbidden by § 1960, and can therefore provide this court with venue, only insofar as such transmission constitutes conducting, controlling, managing, supervising, directing, or owning the business in question that was begun, continued, or completed in the District of Utah.

Of course, the effects—even the *direct objects*—of such actions can certainly be felt in far-removed places. But it does not follow that such actions themselves begin, continue, or end anywhere but the place of the doer (in this case, Mr. Uchendu).[10] And because it is only the place of the proscribed actions *themselves* that provide venue, the fact of the business's operation in the District of Utah is insufficient as a matter of law. Venue lies in the *locus delicti*—that is, the place of the misdeed, where such bad acts occurred that gave rise to the prosecution—and nowhere else, not even the *locus effecti*.

B.     *Locus Delicti* of "conducting"

Relatedly, the government points to a number of cases for the proposition that, in the Tenth Circuit, the act of conducting a business is interpreted broadly. ECF 106 at 6-7. For example, in *United States v. Boss*, the Tenth Circuit held that "participants who may be counted as conductors include those on lower or higher echelons, but with a function at their level necessary to the illegal gambling business." 671 F.2d 396, 400 (10th Cir. 1982). Such persons must at least be more than "merely helpful to the illegal gambling business." *Id.*; *accord United States v. O'Brien*, 131 F.3d 1428, 1431 (10th Cir. 1997).

It is certainly true that Mr. Uchendu's actions as pleaded in the Third Superseding Indictment, taken as true, could support a finding by a jury that Mr. Uchendu conducted an unlicensed money transmitting business contrary to § 1960. For example, mailing checks to

---

[10] The terms at issue are often capable of carrying far-ranging direct objects, but that does not mean that the underlying conduct begins, continues, or ends where such objects are found. For example, Shakespeare could sensibly write that Caliban's mother "was a witch, and one so strong / That could control the moon, make flows and ebbs." THE TEMPEST, Act V, Scene 1. Should such act of control by witchcraft be proscribed under American law, the *locus delicti* would certainly lie where the conduct—the controlling—occurred, not the location of the controlled direct object (in this case, the moon or the place of the tide).

addresses in the District of Utah or wiring funds to bank accounts in the District of Utah, Third Superseding Indictment ¶ 14, may satisfy the *Boss* and *O'Brien* standard for what constitutes the conducting of an illegal business.

However, all of this merely begs the question of *where* such conducting took place—where it began, continued, and ended. Even though Mr. Uchendu may have done many things that affected Utah, it does not necessarily follow that the conducting began, continued, or ended in Utah.[11] Thus, even in light of the cases cited regarding "conducting" liability, the court again holds, as a matter of law, that conducting is not the sort of activity that can begin in one jurisdiction and end in another.[12] There is simply no logical route that the government can take through which Mr. Uchendu's conducting of a business operation could be said to begin where he is and yet somehow end where the business is. Such an argument begs the court to engage in metaphysical gymnastics to find venue generously in clear contravention of a tradition of conservative venue jurisprudence beginning with the Constitution.

Reading the statute in any way that would allow venue to lie where the effects of such conducting, controlling, managing, supervising, directing, or owning are felt—for instance, where the conducted business itself operates—would be to look past the plain language of the statute and

---

[11] After all, through the Third Count of the Third Superseding Indictment, Mr. Uchendu is not being prosecuted for *transmitting* anything (nor could he be, since transmitting is not an operative term providing for culpability) but rather for *conducting* a business.

[12] One district court, in *United States v. Basciano*, 2006 U.S. Dist. LEXIS 92303 at *28-29 (E.D.N.Y. 2006), took the underlying conduct that constituted the managing of an illegal gambling business—that is, the making of payments to certain persons—and where such underlying conduct began and ended, as coterminous with the beginning and ending of the managing itself for purposes of venue. But this court finds the reasoning of the *Basciano* court unpersuasive and declines to follow its lead.

11

smuggle in the substantial contacts test or its functional equivalent through the back door into Tenth Circuit jurisprudence against the clear mandate of *Smith*. Mr. Uchendu is alleged to have violated 18 U.S.C. § 1960 by acts committed in Georgia, and the law dictates that venue lie in such district, even if the crime had substantial contacts with the District of Utah. "[W]hen the statutory language is plain, we must enforce it according to its terms." *Dodd v. United States*, 545 U.S. 353, 359 (2005).

### C. Analogy to Conspiracy

At several points throughout its opposition memorandum, ECF No. 106, the government seeks to import the venue logic of conspiracy into the text of § 1960. And, in fact, at least one district court (in two related proceedings) has concluded that conducting an illegal business (in that case, a gambling business) ends where the business itself operates, borrowing from the "permissive" venue rules of conspiracy. *See United States v. Robles*, 2015 U.S. Dist. LEXIS 183658, at *13-14 (W.D. Okla. 2015);[13] *United States v. Bramley*, 2015 U.S. Dist. LEXIS 183656,

---

[13] The extent of the reasoning on the venue determination in that case is as follows: "Because Count 2 (a substantive charge of conducting an illegal gambling business) involves an ongoing, multi-actor, multi-state organization, § 3237 has much the same permissive effect with that count that it has with respect to the conspiracy counts. The existence of the multi-state gambling business is the key factor. From that beginning point (which has been established), it is no leap at all to look to the acts that were committed in Oklahoma, in furtherance of the gambling business, by Oklahoma-based participants. The business operated, in part, in Oklahoma. The Oklahoma activities were in furtherance of the business of the same gambling organization as that in which these Florida defendants were active participants. Consequently, the offense conduct (the operation of the gambling business, not discrete acts) in which these defendants participated was, in part, 'continued' in Oklahoma within the meaning of § 3237. For that reason, the venue challenge to the § 1955 convictions fails." *United States v. Robles*, 2015 U.S. Dist. LEXIS 183658, at *13-14 (W.D. Okla. 2015).

at *28 (W.D. Okla. 2015).[14] This court, however, in unpersuaded that it is appropriate to import the liberal venue rules underlying conspiracy into a substantive charge.[15]

In fact, much of the government's argument boils down to an invitation (sometimes explicit, sometimes implicit) to shoehorn venue analysis under conspiracy into the substantive count of § 1960, arguing that many of the distinctions between criminal conspiracy and an illegal business "make no difference" in the instant case. ECF No. 106 at 10 n.3. Many of the cases cited for the proposition that venue will lie for conducting a business in violation of the law in any district where its participants performed acts in furtherance of the business's operations, *see, e.g.*, *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir. 1985), *United States v. Smith*, 692 F.2d 693 (10th Cir. 1982), actually only speak to conspiracy *per se*.

Because this court is persuaded that venue analysis for conspiracy and substantive crimes must be performed separately, *United States v. Granados*, 117 F.3d 1089, 1091 (8th Cir. 1997); *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1997), this court declines to follow the *Robles* court or the government's invitation to conflate operating a business with conspiracy for venue purposes. Instead, the court will again reiterate its commitment to hew to the plain text of § 1960

---

[14] The extent of the reasoning on the venue determination in that case is as follows: "As for Count 2 venue, the evidence established that participants in the gambling business undertook activities in furtherance of the business in this district, within the meaning of the broad construction of § 1955 that the Supreme Court embraced in *Sanabria v. United States*, 437 U.S. 54, 70 - 71 n. 26 (1978). The gambling business operated, in part, in Oklahoma. All that is required is that Bramley was a participant in that business, even if he never set foot in Oklahoma. The evidence satisfied that requirement. The court therefore disagrees with Bramley's contention that venue was not established as to Count 2." *United States v. Bramley*, 2015 U.S. Dist. LEXIS 183656, at *28 (W.D. Okla. 2015).

[15] Similarly, this court concludes that *Sanabria*, 437 U.S. at 71, does not stand for the venue proposition for which it is cited in *Bramley*, 2015 U.S. Dist. LEXIS 183656, at *28.

13

and will therefore decline to find venue in the District of Utah by virtue of the textual analysis provided above. Because § 1960 is not a conspiracy charge, this court will not treat it like one for purposes of venue. The government already seeks a conspiracy charge under § 1956, and Defendant does not move for dismissal of such count on venue grounds.

Section 1956, however, is notable in its own right in considering venue as to § 1960 for another reason altogether. That reason, ultimately, is that, in the same 2001 Act by which § 1960 as we know it came into being, 115 Stat. 272, Congress *also* amended the adjacent § 1956 money-laundering statute to include special venue provisions. In particular, Congress provided that venue would lie in money laundering cases *not only* in "any district in which the financial or monetary transaction is conducted" *but also* "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." 115 Stat. at 392.

Thus, Congress made clear that it knows perfectly well how to broaden venue to include not only where *conduct* occurs, but also where the objects or effects of such conduct are or may be felt. Further, to argue that § 1960 could be read so expansively *without* language or amendment such as this would be to contravene the maxim that "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *See U.S. v. Quality Stores, Inc.*, 134 S.Ct. 1395 (2014); *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 145 (2003). If such an amendment weren't necessary to broaden venue (given baseline venue rules as the government suggests), Congress wouldn't have enacted it. However, Congress *did* enact such venue-broadening provisions in the context of § 1956 *but not* § 1960, and this court declines to either

14

read the amended language in § 1956 as surplusage, or, on the other hand, import such language into § 1960 (created by the very same legislative instrument), where Congress decided not to.

It truly strains logic that Congress, in the same breath that it created broad venue rules for one offense, would not think to speak clearly as to § 1960 at its effective conception if it wanted venue to lie anywhere but the narrowly construed and traditional *locus delicti*. To read venue expansively in one statute, when Congress has shown clearly that it knows how to craft such venue rules under such provisions as it sees fit (even in an adjacent statutory provision and through the same Act), would be to "take a chainsaw to these nuanced problems" when Congress has demonstrated that it "meant to use a scalpel." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1171 (2021).

## II.     18 U.S.C. § 2

Finally, the government argues that venue should lie in the District of Utah because the "Defendant aided and abetted others conducting an unlicensed money transmitting business in the District of Utah and elsewhere." ECF No. 106 at 15. The government then cites *United States v. Coppola*, 486 F.2d 882, 886 (10th Cir. 1973), for the proposition that "an alleged aider and abettor is subject to venue where the substantive offense was committed." ECF No. 106 at 15.

*Coppola*, in turn, cites two cases—*United States v. Jackson*, 482 F.2d 1167 (10th Cir. 1973) and *United States v. Kilpatrick*, 458 F.2d 864 (7th Cir. 1972). *Jackson* holds that "[i]t necessarily follows that as the substantive crime was committed in [one district], the crime for aiding and abetting may also be tried in that district. Congress has declared that an aider and abettor may be punished as a principal, and hence he may be punished in the same district as the principal." 482 F.2d at 1178-79. *Kilpatrick* holds much the same. 458 F.2d at 868 ("Congress has declared that an aider and abettor may be punished as a principal, and it follows that he may be punished in the

15

same district as the principal."); *accord United States v. Davis*, 666 F.2d 195, 200 (5th Cir. 1982) (finding venue for aiding-and-abetting liability under 18 U.S.C. § 2 in the district where the principal was culpable). It is thus true that 18 U.S.C. § 2 kicks open the door of traditional venue rules and enables prosecution in districts in which the charged Defendant himself did not act. The effect of that provision, and the thrust of cases interpreting it, is undoubtedly to broaden the venue jurisprudence inherited from English law. *See United States v. Gillette*, 189 F.2d 449, 451-52 (2d Cir. 1951).

Although the Third Superseding Indictment charges only Mr. Uchendu under Count Three, "[i]t was not necessary that the indictment name the principals who committed the offense. Their names are not essential elements of the offense." *United States v. Harris*, 523 F.2d 172, 174 (6th Cir. 1975). Instead, it suffices that the indictment, liberally construed and interpreted to include facts necessarily implied, *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir. 1988); *accord United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir. 1978), allege all of the essential elements of the crime by a third-party principal that may have been aided and abetted by the charged Defendant. *See Harris*, 523 F.2d at 174. And here, the court concludes that the Third Superseding Indictment sufficiently pleads third-party commission of the substantive offensive under 18 U.S.C. § 1960 that may have been aided and abetted by Mr. Uchendu, *see* Third Superseding Indictment at 9-10, particularly as to Coconspirator-1. *Id*.

In his supplemental memorandum, Mr. Uchendu argues that Count Three must be "dismissed to the extent it alleges Uchendu independently violated 18 U.S.C. § 1960[,]" ECF No. 122 at 2, and that the jury must find some other person committed every element of that statute before Uchendu can face liability under 18 U.S.C. § 2. *Id*. In short, Mr. Uchendu argues that "the

16

court should not collapse the venue determination for aiding and abetting with that [] for the substantive charge." *Id*. at 3.

In response, the government characterizes this request as "carv[ing]" Count Three "into two separate offenses." ECF No. 123 at 1. As the government notes, "[a]iding and abetting is not an offense separate from that as a principal." *Id*. at 2. And, in this way, the government is correct—18 U.S.C. § 2 is "an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *United States v. Deiter*, 890 F.3d 1203, 1216 (10th Cir. 2018) (quoting *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016)).[16] As a result, no part of Count Three is properly dismissed because the government has pleaded, through the Third Superseding Indictment, sufficient facts to support a claim under that count, and venue is proper in this district by operation of 18 U.S.C. § 2.

However, although 18 U.S.C. § 2 does not form a separate *offense* (and liability necessarily remains premised on § 1960), it certainly does form a separately instructible theory of liability as principal, as Mr. Uchendu argues. And while the issue of jury instructions is, of course, more appropriately resolved conclusively at a later stage of litigation according to the Amended Trial Order, ECF No. 117, the court believes it is appropriate to emphasize that, insofar as venue is

---

[16] *United States v. Deiter*, 890 F.3d 1203, 1216 (10th Cir. 2018) also states, as cited in the government's response to Defendant's supplemental brief, *see* ECF No. 123 at 2, that 18 U.S.C. § 2 "eliminates the legal distinction between aiders and abettors and principals." However, this statement must be read in the context of the full opinion, including the following sentence, which reads "[t]herefore, it makes sense to look to the underlying statute of conviction, rather than § 2, to decide whether the elements clause is satisfied." 890 F.3d at 1216. Thus, the nature of the underlying crime will determine, per *Deiter*, whether an aiding and abetting charge constitutes a "violent felony" for the purposes of, for example, the Armed Career Criminal Act (ACCA). However, this statement is *not* properly read for the proposition that the venue cases (including as they relate to aiding and abetting), such as *Coppola* and *Jackson*, were implicitly overruled. With respect, then, the government seems to have overread the above-quotes line from *Deiter*.

appropriate as to Count Three *only* by operation 18 U.S.C. § 2, conviction will lie in this district, if at all, given proper instruction under § 2.

"[T]he law 'is clear that before one can be convicted as an aider and abettor, the jury must first find that the substantive offense has been committed.'" *United States v. Edwards*, 782 F.3d 554, 564 (10th Cir. 2015) (quoting *United States v. Morris*, 612 F.2d 483, 496 (10th Cir. 1979)). It will therefore be necessary for the prosecution to prove to the jury at trial that the substantive offense was committed by some third party in the District of Utah, and that Mr. Uchendu aided and abetted such offense. *United States v. Morris*, 612 F.2d 483, 496 (10th Cir. 1979); *accord United States v. Barker*, 542 F.2d 479, 485-86 n.14 (8th Cir. 1976). Otherwise, venue is not proper in this district for the reasons discussed at length above.

The jury will be so instructed, and the parties are counseled to consider this doctrinal nuance in preparing their proposed jury instructions. *See, e.g.*, 1 MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL ¶ 11.01 (Lexis); PATTERN CRIM. JURY INSTR. 10TH CIR. 2.06 (West).

## CONCLUSION & ORDER

For the foregoing reasons, Mr. Uchendu's motion to dismiss Count Three for lack of venue is **DENIED**. However, because venue is appropriate as to Count Three only under 18 U.S.C. § 2, a conviction must be supported by instruction under that section. **IT IS SO ORDERED**.

DATED September 28, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge