IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLINTON CHUKWUDI UCHENDU,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER ON PARTIES' MOTIONS IN LIMINE**<br><br>Case No. 2:22-cr-00160-JNP-2<br><br>District Judge Jill N. Parrish |

In this action, the United States of America alleges that Clinton Chukwudi Uchendu ("Mr. Uchendu" or "Defendant") perpetrated a series of financial crimes through his alleged participation in a romance scam conspiracy. *See* ECF No. 102 ("Third Superseding Indictment"). Before the court at this time are the parties' motions in limine, ECF Nos. 136, 142, 143, 144, 145, 146, filed in anticipation of Mr. Uchendu's upcoming trial.

## BACKGROUND

On May 4, 2022, a grand jury indicted Princess Eziyi for 18 U.S.C. § 1956(h) conspiracy to commit money laundering and 18 U.S.C. § 1341 mail fraud. ECF No. 5. On May 25, 2022, the United States filed a Superseding Indictment, adding Mr. Uchendu as a codefendant. *See* ECF No. 6. On June 21, 2023, the prosecution filed a Second Superseding Indictment, ECF No. 76, adding a third count against Mr. Uchendu under 18 U.S.C. § 1960 for "knowingly conduct[ing], control[ling], manag[ing], supervis[ing], direct[ing] or own[ing] all or part of an unlicensed money transmitting business without registering that business as required by 31 U.S.C. § 5330." *Id.* at 10.

On August 30, 2023, the prosecution filed its Third Superseding Indictment, through which it clarified that the unlicensed money transmitting business that gives rise to the 18 U.S.C. § 1960 charge "consisted of a network of participants who employed a variety of methods to transmit the proceeds" who were mostly located in Utah County, Utah.

## ANALYSIS

This order resolves six motions in limine. *See* ECF Nos. 136, 142, 143, 144, 145, 146. The motions involve a range of issues, the specific legal standards for which are outlined below in conjunction with each motion. At the outset, the court reiterates that relevant evidence is generally admissible unless excluded under the United States Constitution, federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 402. To be relevant under the Federal Rules, evidence need only "have a tendency to make a fact more or less probable than it would be without the evidence" where such fact "is of consequence in determining the action." FED. R. EVID. 401. That is, evidence must be probative of a material fact. This bar is "not a high one." *United States v. Cerno*, 529 F.3d 926, 934 n.5 (10th Cir. 2008).

The Federal Rules of Evidence provide, however, that relevant evidence may be excluded where its probative value is "substantially outweighed" by a risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. However, as the Tenth Circuit has made clear, excluding relevant evidence is "an extraordinary remedy to be used sparingly," and does not protect parties from *all* prejudice, only *unfair* prejudice. *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1275 (10th Cir. 2023).

The presumption that the jury ought to hear and consider relevant evidence as they render a true verdict is designed to empower the jury in the criminal-adjudicatory process and ultimately

2

reflects the fact that the instructional criminal jury trial is "a fundamental reservation of power" for the American people "in our constitutional structure" to "ensure their control in the judiciary." *Blakely v. Washington*, 542 U.S. 296, 306 (2004) (citing Letter XV by the Federal Farmer (Jan. 18, 1788), reprinted in 2 THE COMPLETE ANTI-FEDERALIST 315, 320 (H. Storing ed. 1981) (describing the jury as "secur[ing] to the people at large, their just and rightful [control] in the judicial department"); John Adams, Diary Entry (Feb. 12, 1771), reprinted in 2 WORKS OF JOHN ADAMS 252, 253 (C. Adams ed. 1850) ("[T]he common people, should have as complete a control . . . in every judgment of a court of judicature" as in the legislature)).

    **I.**    **Evidence of Continuing Receipt of Funds, Extrinsic Transactions (ECF Nos. 136, 145)**

Both parties have filed motions in limine regarding evidence of certain financial transactions by Mr. Uchendu not involving the alleged coconspirators subsequent to the period of concern in the Third Superseding Indictment. These subsequent transactions are the subject of the prosecution's Notice Pursuant to Rule 404(b) of the United States' Intent to Introduce Evidence of Similar Acts. ECF No. 129. The prosecution, through its Motion in Limine Pursuant to Rule 404(b) to Admit Evidence of Continued Receipt & Transmission of Strangers' Money into 2018 and 2019, ECF No. 136, seeks an order admitting such evidence, while Mr. Uchendu, through his Motion in Limine to Prohibit Admission of Extrinsic Transactions, ECF No. 145, seeks the exclusion of the same.

    **A. 404(b) Standard**

Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . This evidence may be admissible for another

3

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)-(2).

This court considers four elements in determining the admissibility of evidence offered under this rule: "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) [that] a limiting instruction is given if the defendant so requests."[1] *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)). Regardless of whether the evidence proffered arises from conduct prior or subsequent to the charged offense, the determination of its admissibility demands "case-specific inquiry," and is ultimately within the district court's broad discretion. *Id*. at 1157; *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996).

B. Analysis

Generally, the standard for "satisfying Rule 404(b) admissibility is permissive: if the other-act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011); *United States v. Cushing*, 10 F.4th 1055, 1075 (10th Cir. 2021). When other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has "the potential impermissible side effect of

---

[1] *Mares* further explains that, under prong (1), a proper purpose includes the purposes enumerated in Rule 404(b); under prong (2), relevancy refers to proving or disproving the elements necessary to the charged offense; prong (3) relates to the balancing test laid out under FED. R. EVID. 403; and, as to (4): "[t]he limiting instruction must caution the jury to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime." 441 F.3d at 1156-57.

allowing the jury to infer criminal propensity." *United States v. Cherry*, 433 F.3d 698, 701 n.3 (10th Cir. 2005) (quotation omitted).

Mr. Uchendu argues that the extrinsic evidence at issue here would only tend to speak to propensity and could not be directed to a proper purpose. ECF No. 145 at 2-3. The Defendant argues that the proposed evidence wouldn't show Mr. Uchendu's intent, knowledge, plan, or lack of mistake without leading the jury through the propensity box (i.e., without relying on some inference by the jury regarding some propensity of the Defendant or his character) because it does not show that "Uchendu knew the funds in the extrinsic transactions contained bad money," ECF No. 145 at 3, likening Mr. Uchendu to a bank, which would not be deemed to have knowledge of every transaction involving bad money that passes through its network accounts. But the court is not convinced that the evidence of subsequent financial transactions would be relevant to Mr. Uchendu's intent, knowledge, or lack of mistake *only if* the jury were to make inferences about Mr. Uchendu's character or propensities.

The Tenth Circuit's analysis under *Huddleston* prong (1) in *Mares* is analogous to the case at hand. In that case, like this one, the defendant argued that "she was a victim of trickery" who had been "duped [] into unknowingly carrying drugs[.]" *Mares*, 441 F.3d at 1158. The prosecution offered evidence of acts of drug transportation the following year, tending to show that the Defendant had knowledge of the drugs (or otherwise possessed a culpable mental state) during the period at issue and that the earlier conduct was not a mistake. *Id*. Because of the improbability of repeated, mistaken conduct of the same *sort*, the Tenth Circuit held that evidence of subsequent conduct spoke to the defendant's mental state during the earlier acts at issue.

Similarly, here, although the evidence of the subsequent transactions may not serve as *direct* evidence of Mr. Uchendu's knowledge, as the Defense points out, it provides the basis for

5

the jury to infer that Mr. Uchendu possessed a culpable mental state by operation of a theory of deliberate indifference or absence of mistake, as "knowledge must almost *always* be proved[] by circumstantial evidence." *United States v. Santos*, 553 U.S. 507, 521, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) (opinion of Scalia, J.) (emphasis added).

To borrow from *United States v. Rodella*, although the extrinsic evidence could *feasibly* prompt an inference by the jury that Mr. Uchendu possessed certain bad propensities, the jury is "not *required* to make any such inferences," 804 F.3d 1317, 1334 (10th Cir. 2015) (emphasis added), and could instead reach the proper purposes of Rule 404(b), inferring only that Mr. Uchendu's subsequent actions vitiate his claimed defense of mistake regarding the earlier transactions. These inferences do not rely on Mr. Uchendu's character or propensity, and instead rest only "on a logic of improbability" that recognizes that a similar, repeated act "decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense." *Id*. (citing *United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007)).

Relatedly, this also serves to show that the extrinsic evidence proffered could provide the basis for an inference that Mr. Uchendu was deliberately ignorant, feasibly satisfying the requirements set out in *United States v. Chavez*, 340 F. App'x 501, 506-07 (10th Cir. 2009),[2] in avoiding actual knowledge of the unlawful conduct underlying the conspiracy[3] or was otherwise

---

[2] "A deliberate-ignorance instruction is appropriate upon two showings: '(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *United States v. Sorensen*, 801 F.3d 1217, 1233 (10th Cir. 2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

[3] That the extrinsic evidence would tend to support an inference of deliberate indifference also relates to the prosecution's arguments that the jury is properly instructed on the same. *See* ECF No. 135 at 10. Here, it is not necessary that the government show direct evidence of Mr. Uchendu's actual knowledge of all relevant dimensions of the transaction—or even direct evidence of his

not mistaken about the source of the funds or the nature of the transactions following the closure of his account and other red flags.[4]

Comparable to the Tenth Circuit's recent opinion in *United States v. Otuonye*, the evidence proffered here tends to show that the frequency, amount at issue (consistently in the tens of thousands of dollars), and questionable characteristics of the moneys transferred (including the relatively unfamiliar transactional partners, the frequent check bounces, etc.) support an inference that the transactions were not for legitimate, lawful purposes and were otherwise outside of the usual course of financial activity, and therefore speaks to knowledge under a theory of deliberate ignorance. *Cf.* 995 F.3d 1191, 1212 (10th Cir. 2021). This is particularly true when the evidence is viewed, as it must be, in the light most favorable to the government. *See United States v. Baz*, 442 F.3d 1269, 1272 (10th Cir. 2006).

Alternatively, of course, the jury might infer that Mr. Uchendu was nothing but the victim of unfair bias and prejudice because he is a Nigerian man, as the Defense argues. ECF No. 145 at 4. However, which inference is *best* supported by the evidence is, of course, a question for the jury alone. It is only for the court to determine that inferences of Mr. Uchendu's knowledge, intent, or

---

conscious avoidance of such knowledge under a theory of deliberate indifference. Instead, in its argument for deliberate indifference, the government is entitled to the "benefits of inferences from circumstantial evidence," *United States v. Hanzlicek*, 187 F.3d 1228, 1233 (10th Cir. 1999), including those which can be drawn from the extrinsic evidence proffered here. *See* 10th Cir. Criminal Pattern Jury Instructions No. 1.37, Cmt. (2006 ed.) ("Although the deliberate ignorance instruction in general was discouraged, it may be given 'when the Government presents evidence that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of prosecution.'") (quoting *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000)); *see also United States v. Otuoyne*, 995 F.3d 1191, 1211-12 (10th Cir. 2021).

[4] Although the court does not mean to imply that the extrinsic evidence would be *sufficient*, by itself, to show such deliberate ignorance under Tenth Circuit law, it is certainly directed to proving such proper purposes, and therefore satisfies *Huddleston* prong (1).

absence of mistake *could* be drawn by the jury without relying on a propensity inference. And because a propensity-free chain of reasoning is available to the jury to arrive at one or more of the proper purposes enumerated in Rule 404(b), the extrinsic evidence clears *Huddleston*'s first hurdle.

As to the second element of *Huddleston*, the Defendant does not contest that the extrinsic evidence would be relevant. And the court is satisfied that the proffered evidence is, in fact, probative of a material fact. What Mr. Uchendu contests, instead, is whether the probative value of the extrinsic evidence is not substantially outweighed by the risk of unfair prejudice to him under *Huddleston* prong (3) and Rule 403. This is so, as Mr. Uchendu argues, because "[t]he impression of a Nigerian charged with a money laundering scam is universally highly negative," ECF No. 145 at 4, and evidence of unrelated transactions would create an impression in the mind of the jury of Mr. Uchendu's bad character.

However, the significant probative value of the extrinsic evidence—shown by the similarity and temporal proximity of the subsequent transactions to the transactions at issue in the Third Superseding Indictment, *see Mares*, 441 F.3d at 1159 (discussing factors relevant in probative value analysis)[5]—is not outweighed by the danger of unfair prejudice (or any other factor laid out in Rule 403), and therefore does not warrant the "extraordinary remedy" of excluding relevant evidence, which is only to be used "sparingly." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985). As mentioned above, Rule 403 is not directed to eliminating *all* prejudice—after all, all evidence "establishing an element of the charged crime" is prejudicial in

---

[5] *See also United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quoting *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997)) ("Similarity may be demonstrated through 'physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'").

the sense that it is adverse to a defendant's case. *Mares*, 441 F.3d at 1159; *accord United States v. Tennison*, 13 F.4th 1049, 1058 (10th Cir. 2021).

Instead, Rule 403 is designed to protect parties from *unfair* prejudice. Unfair prejudice, in turn, arises from evidence that "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Tennison*, 13 F.4th at 1058 (emphasis added); *accord United States v. Alfred*, 982 F.3d 1273 (10th Cir. 2020). And, again, such unfair prejudice must not only be at play, but must *substantially outweigh* the probative value of the evidence tendered. FED. R. EVID. 403.

The extrinsic evidence at issue here is not the sort of evidence that arouses such an emotional response, nor would it affect jury sentiment adversely wholly apart from its judgment as to Mr. Uchendu's guilt or innocence. It thus does not create appreciable danger of unfair prejudice. The jury might be unperturbed by the evidence of the extrinsic transactions for the same reasons that it declines to find that Mr. Uchendu possessed a culpable mental state in the first place—for example, as the Defense argues, the jury might find that Mr. Uchendu was an excusably ignorant participant in a "legitimate parallel market for sending funds to Nigeria," ECF No. 126 at 2, and that his failure to assure himself of the lawfulness of the transactions or the source of the funds did not rise to the level of culpable, deliberate ignorance. Similarly, the evidence (documents and testimony of financial transactions) is not inflammatory, emotionally heavy-handed,[6] or

---

[6] To the extent evidence consists of victim testimony, as the prosecution states it might, ECF No. 152 at 2, the court is particularly disinclined to allow the extraordinary remedy of exclusion under Rule 403. *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988). This is so, in part, because live testimony is crucial to "[t]he ceremony of trial," *see Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1263 (5th Cir. 1988); *Palmer v. Valdez*, 560 F.3d 965, 969 n.4 (9th Cir.

salacious, and even if there were some measure of unfair prejudice, the court concludes that it does not substantially outweigh the probative value of the evidence. Thus, *Huddleston* prong (3) and Rule 403 do not bar admission of the extrinsic evidence proffered.

As to the final element of the *Huddleston* analysis, Mr. Uchendu argues that a limiting instruction would "do nothing to ameliorate the obvious and overwhelming prejudice that will result" from the admission of the extrinsic evidence. ECF No. 145 at 4. However, having already concluded that the probative value of the relevant extrinsic evidence is not substantially outweighed by unfair prejudice under FED. R. EVID. 403, the court declines to exclude the evidence on a theory of unfair prejudice through *Huddleston* prong (4) and Rule 105. Instead, the court is confident that the jury will be competent to understand and follow the instructions that it is given. The Anglo-American "theory of trial *relies* on the ability of a jury to follow instructions," *Opper v. United States*, 348 U.S. 84, 95 (1954) (emphasis added), and this court declines to pick at the roots of the instructional jury trial or otherwise express any "distrust of the jury system." *Jackson v. Denno*, 378 U.S. 368, 430 (Harlan, J., dissenting).

**C. Resolution and Order**

For these reasons, the prosecution's Motion in Limine Pursuant to Rule 404(b) to Admit Evidence of Continued Receipt & Transmission of Strangers' Money into 2018 and 2019, ECF

---

2009), and because it is generally the favored method of presenting evidence. *See Wheeler*, 862 F.2d at 1408; *Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004); *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 n. 4 (10th Cir. 1986); 7 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 32.24[5] (3d ed. 2003); *Manning v. Lockhart*, 623 F.2d 536, 539 (8th Cir. 1980); *Interface Partners Int'l, Ltd. v. Hananel*, 575 F.3d 97, 105 (1st Cir. 2009).

No. 136, is hereby **GRANTED**, while Defendant's Motion in Limine to Prohibit Admission of Extrinsic Transactions, ECF No. 145, is **DENIED**.

### II. Testimony Concerning Meaning of Words (ECF No. 142)

Through its Motion in Limine to Permit Testimony Concerning Meaning of Words, ECF No. 142, the prosecution seeks the admission of lay witness testimony defining or regarding terms that investigators or cooperating witnesses may use at trial and that may appear in documentary evidence (such as the documents proffered by the prosecution's motion discussed below, ECF No. 143). These terms fall into two major categories—(1) "coded words [and] shorthand terms" used by "members of the conspiracy," and (2) Nigerian pidgin terms. ECF No. 142 at 2.

#### A. Standard

Under FED. R. EVID. 701, non-expert witnesses may offer opinion testimony limited to that which is "rationally based on the witness's perception[,] helpful to clearly understanding the witness's testimony or to determining a fact in issue[,] and [] not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This court has the discretion "to exclude lay witness testimony for other reasons contemplated by the Federal Rules of Evidence, among them (1) Rule 701 (whether the testimony is rationally based on perceptions of the witness and would be helpful to the trier of fact); and (2) Rule 403 (whether the evidence is cumulative or its helpfulness is outweighed by unfair prejudice)." *United States v. Goodman*, 633 F.3d 963, 969 (10th Cir. 2011).

#### B. Analysis

##### i. Code words

As to the coconspirator code words, the prosecution points to *United States v. Duran*, 941 F.3d 435, 450 (10th Cir. 2019), in which the Tenth Circuit affirmed the decision of the court below

to allow a police officer to testify as a lay witness regarding "the meaning of code words[.]" This is so, the Tenth Circuit stated, because such testimony "could reasonably be considered a lay opinion based on information learned through the investigation." *Id*. Other Tenth Circuit cases have reached similar results, and, in fact, the panel in *United States v. Sandoval* went so far as to say that "[f]or the most part, our cases have allowed witnesses to testify and explain coded language without first being qualified as experts." 680 Fed. App'x 713, 717 (10th Cir. 2017) (citing *United States v. Brooks*, 736 F.3d 921, 927-29 (10th Cir. 2013) and *United States v. Patterson*, 713 F.3d 1237, 1240-41 (10th Cir. 2013)).

However, in fairness, these cases sit in tension with some earlier panel decisions, such as *United States v. Blake*, in which the Tenth Circuit reiterated that "[a] person may testify as a lay witness only if his opinions or inferences do not require *any* specialized knowledge and could be reached by *any* ordinary person." 284 Fed. App'x 530, 539 (10th Cir. 2008) (emphasis added). In *Blake*, the Tenth Circuit positively cited a Ninth Circuit case in which law enforcement testimony regarding code words in the drug-trafficking realm was admitted as expert, rather than lay, testimony. *Id*.; *see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997).

Whereas *Blake* cites the Ninth Circuit case for the proposition that such testimony must be considered expert testimony because it was based on "extensive experience," 125 F.3d at 1246, *Duran* cites a competing Fifth Circuit case under which "extensive involvement" in an investigation was proper grounds for lay testimony. 941 F.3d at 450; *see United States v. Akins*, 746 F.3d 590, 599 (5th Cir. 2014). *Blake* also cites to several prior Tenth Circuit cases in which such code-word testimony was admitted as expert, rather than lay, testimony. *See* 284 Fed. App'x at 540 (collecting cases). The case of *United States v. Cristerna-Gonzalez* partially ameliorates this tension by stating that "[a]lthough a law-enforcement officer's testimony based on knowledge

12

derived from the investigation of the case at hand is typically regarded as lay testimony, opinion testimony premised on the officer's professional experience as a whole is expert testimony." 962 F.3d 1253, 1259 (10th Cir. 2020).[7]

Thus, to the extent that the witness testimony contemplated by the prosecution is based on either conspiracy participants' experience in the conspiracy *or* the experience of investigators during the course of *this* investigation (necessarily a "limited amount of expertise, if any," *United States v. Kearn*, 863 F.3d 1299, 1312 (10th Cir. 2017)), such testimony is admissible as lay testimony. However, to the extent that the prosecution will seek to offer testimony based on law enforcement officers' or investigators' previous investigations into similar conspiracies, it must be offered, if at all, as expert testimony.

ii. **Nigerian pidgin terms**

As to the Nigerian pidgin terms, the prosecution points to the out-of-circuit case *United States v. Macedo-Flores*, 788 F.3d 181 (5th Cir. 2015), for the proposition that native speakers of a foreign language, intimately involved in the transactions at issue, may testify as to the meaning of foreign-language terms as lay witnesses. *Id*. at 192. Other circuits, however, have apparently demanded that experts as to language or translation be considered experts before allowing testimony. *See, e.g.*, *United States v. Muro*, 784 Fed. App'x 160, 163 (4th Cir. 2019).

Admittedly, expert qualification in the area of foreign languages (including to the extent that they are implicated in Nigerian pidgin) would certainly be preferable. However, because the pidgin at issue is seemingly more akin to a form of English slang (both because of its nature as

---

[7] And, per *United States v. Marquez*, if testimony is based on what was learned during *this* investigation, rather than past investigations, it is properly considered lay testimony. 898 F.3d 1036, 1050 (10th Cir. 2018).

13

pidgin *and* based on the court's impression of the characterization of terms in the prosecution's motion, ECF No. 142 at 2), the court concludes that it is appropriate to consider lay testimony on Nigerian pidgin more like the code-word testimony discussed above than more-traditional foreign-language translation testimony. Thus, the same considerations outlined above distinguishing lay and expert testimony under Rules 701 and 702, respectively, will be applicable in the context of pidgin testimony, as well, and lay testimony regarding the same will generally be admissible.

In both cases, the court seeks to provide as much helpful and reliable information as will assist the jury without trespassing into the province of the fact finder. Thus, the parties may be inclined to offer competing interpretations or significance to code words or pidgin terms, in which case it will remain the prerogative of the jury to assign credibility and credence as it sees fit. In any case, the court will maintain its gatekeeping function during the trial, including through ruling on objections, to ensure that lay testimony remains reliable and helpful to the jury and does not improperly cross into the territory of Rule 702. *See Blake*, 284 Fed. App'x at 540.

### C. Resolution and Order

Thus, subject to the considerations outlined in the foregoing section, the prosecution's Motion in Limine to Permit Testimony Concerning Meaning of Words, ECF No. 142, is **GRANTED**.

### III. Coconspirator Communications Regarding "Ali" (ECF No. 143)

Through its Motion in Limine to Admit Coconspirator Communications Regarding "Ali," ECF No. 143, the prosecution seeks the admission of documents—namely, Whatsapp text threads included as exhibits appended to the prosecution's Supplemental Memorandum in Support of Motion in Limine, ECF No. 147—in which the term "ali" (or "alibaba") is used by Uchendu and others. The prosecution represents that the communications are not offered for the truth of the

matter asserted therein but instead merely to show that the term *was used* in a way consistent with lay witnesses' proffered definition of the term.

### A. Standard

Under FED. R. EVID. 802, hearsay is presumptively inadmissible. Rule 801 defines hearsay as out-of-court statements that are offered to prove the truth of the matter asserted therein. FED. R. EVID. 801(c). The "matter asserted" in this case is the "fact being asserted by the declarant in uttering the statement," which is not necessarily the matter "that the party offering the statement into evidence is trying to prove with the statement." *United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010).

### B. Analysis

The prosecution seeks to introduce the communications at issue, it asserts, for the narrow purpose of showing that "ali" (or "alibaba") is a term that the insiders to the conspiracy knew and used to refer to a particular sort of scam transaction. ECF No. 143 at 4. Because Mr. Uchendu also used the term, the prosecution argues, it follows that Mr. Uchendu was an insider to the scam and a knowing participant rather than a dupe. *Id*.

And insofar as the communications involving the term "ali" and their context are offered for the purpose of showing that the statements *were made* in the first place or may have carried a certain meaning, they are definitionally not hearsay, and thus not subject to the hearsay analysis beginning with the presumption of inadmissibility laid out in FED. R. EVID. 802.[8] Thus, the

---

[8] And, because such statements are not being offered as non-hearsay coconspirator statements under FED. R. EVID. 801(d)(2)(E), but instead are simply without the definitional ambit of hearsay laid out in Rule 801(c), no *James* hearing is necessary. *See United States v. James*, 590 F.2d 575, 578 (5th Cir. 1979).

prosecution need only show, under Rule 401 (and, by implication, Rule 402), that the evidence is probative of a material fact, and that its probative value is not substantially outweighed by a danger of any of the factors enumerated in Rule 403.

Here, the fact of Mr. Uchendu's use of a scam-insider code word would be probative of his knowledge of the nature of his dealings with the coconspirators and is thus relevant. Although the use of the terms is certainly not *sufficient* to show his knowledge, and although Mr. Uchendu may certainly argue that he did not understand the term to have the same meaning as in the documents provided, *see* ECF No. 157 at 2, the terms' ability to carry a certain meaning or use in such a context certainly makes it more likely that the term also meant as much when used by Uchendu, and that he thus possessed certain knowledge or a particular mental state. Thus, the documents are probative of a material fact and clear Rule 401's "very low" bar for relevance. *United States v. Martinez*, 923 F.3d 806, 815 (10th Cir. 2019). Additionally, the court is satisfied that the evidence would not be so unfairly prejudicial as to substantially outweigh its probative value, and Mr. Uchendu may offer his competing explanation for his use of the term "ali."

### C. Resolution and Order

The court concludes that the proffered coconspirator statements involving the term "ali" are admissible so long as they are not offered to prove the truth of the matter asserted therein. The prosecution's Motion in Limine to Admit Coconspirator Communications Regarding "Ali," ECF No. 143, is **GRANTED**.

### IV. Remaining Motions in Limine (ECF Nos. 144, 146)

Two motions in limine—the prosecution's Motion in Limine to Preclude Jury Nullification Arguments and Evidence Regarding Public Policy and Prosecutorial Motives, ECF No. 144, and Motion to Strike Anticipated Testimony of Defendant's Proffered Expert Uzoma Eze and Request

for Daubert Hearing, ECF No. 146—are not resolved in this order. As to the first (regarding arguments and evidence on public policy and prosecutorial motives, ECF No. 144), counsel for Mr. Uchendu represented at an October 24, 2023 conference that it would meet and confer with the prosecution to resolve the prosecution's concerns expressed in that motion, and the court therefore declines to offer a ruling here. As to the second motion (regarding Mr. Uchendu's proffered witness, ECF No. 146), the court has scheduled a *Daubert* hearing and will address the admissibility of Mr. Eze's expert testimony at a future point.

## CONCLUSION & ORDER

For the foregoing reasons, the court hereby **ORDERS** as follows, subject to the considerations outlined in this Memorandum Decision & Order:

1) The prosecution's Motion in Limine Pursuant to Rule 404(b) to Admit Evidence of Continued Receipt & Transmission of Strangers' Money into 2018 and 2019, ECF No. 136, is **GRANTED**.

    a. For the same reasons, Defendant's Motion in Limine to Prohibit Admission of Extrinsic Transactions, ECF No. 145, is **DENIED**.

2) The prosecution's Motion in Limine to Permit Testimony Concerning Meaning of Words, ECF No. 142, is **GRANTED**, subject to the considerations discussed above.

3) The prosecution's Motion in Limine to Admit Coconspirator Communications Regarding "Ali," ECF No. 143, is **GRANTED**.

DATED November 9th, 2023.

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge