IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLINTON CHUKWUDI UCHENDU,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER ON DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY OF UZOMA EZE**<br><br>Case No. 2:22-cr-00160-JNP-2<br><br>District Judge Jill N. Parrish |

In this action, the United States of America alleges that Clinton Chukwudi Uchendu ("Mr. Uchendu" or "Defendant") perpetrated a series of financial crimes through his alleged participation in a romance scam conspiracy. *See* ECF No. 102 ("Third Superseding Indictment"). Before the court is the prosecution's Motion to Strike Anticipated Testimony of Defendant's Proffered Expert Uzoma Eze and Request for Daubert Hearing, ECF No. 146. For the reasons set out below, the motion of the United States is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL BACKGROUND**

On May 4, 2022, a grand jury indicted Princess Eziyi for 18 U.S.C. § 1956(h) conspiracy to commit money laundering and 18 U.S.C. § 1341 mail fraud. ECF No. 5. On May 25, 2022, the United States filed a Superseding Indictment, adding Mr. Uchendu as a codefendant. *See* ECF No. 6. On June 21, 2023, the prosecution filed a Second Superseding Indictment, ECF No. 76, adding a third count against Mr. Uchendu under 18 U.S.C. § 1960 for "knowingly conduct[ing], control[ling], manag[ing], supervis[ing], direct[ing] or own[ing] all or part of an unlicensed money transmitting business without registering that business as required by 31 U.S.C. § 5330." *Id.* at 10.

On August 30, 2023, the prosecution filed its Third Superseding Indictment, through which it clarified that the unlicensed money transmitting business that gives rise to the 18 U.S.C. § 1960 charge "consisted of a network of participants who employed a variety of methods to transmit the proceeds" who were mostly located in Utah County, Utah.

On September 25, 2023, Mr. Uchendu filed a Notice of Intent to Use Expert, pursuant to FED. R. CRIM. P. 16(b)(1)(C), signaling his intent to offer Uzoma Eze ("Mr. Eze") as an expert witness at trial. ECF No. 126. Mr. Eze is an attorney and certified public accountant, and is the founder of AideMoney, a small internet application for sending money to Africa. *Id*. Mr. Uchendu would have Mr. Eze testify to four opinions:

(1) There is a legitimate parallel market for sending funds to Africa;

(2) Criminals in Nigeria exploit this parallel market;

(3) Innocent money mules uses their own names and accounts; and

(4) The facts and circumstances of this case are consistent with Mr. Uchendu acting as an innocent money mule.

*Id*.

The United States moved to exclude the proffered testimony of Mr. Eze under FED. R. EVID. 702 or, in the alternative, hold a *Daubert* hearing to determine whether Mr. Eze may testify to the jury. ECF No. 146.

On December 5, 2023, the court held a *Daubert* hearing, at which it heard testimony from Mr. Eze and argument from the parties regarding Mr. Eze's qualifications. *See* ECF No. 181 (official transcript of the hearing). The court also granted the parties leave to file supplemental memoranda in support of their positions regarding Mr. Eze's expertise and whether certain portions of his proffered testimony should be excluded. *See* ECF Nos. 185, 198. In their supplemental

memoranda, the parties offered significant concessions from their initial positions and greatly narrowed the range of issues in dispute.

After the *Daubert* hearing, Mr. Uchendu also filed a Supplement to Expert Disclosure of Uzoma Eze. ECF No. 180. That supplemental disclosure emphasized, among other things, Mr. Eze's personal involvement in and familiarity with the Nigerian-American community and his review of certain text messages between Mr. Uchendu and scammers known as "Yahoo Boys," ostensibly involved in online romance fraud.

## LEGAL STANDARD

Under the amended standard established by FED. R. EVID. 702, effective as of December 1, 2023, expert witnesses who are qualified "by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise "if the proponent demonstrates to the court that it is more likely than not that [] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; [] the testimony is based on sufficient facts or data; [] the testimony is the product of reliable principles and methods; and [] the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

These amendments, as explained in the Notes of the Advisory Committee on the 2023 Amendments, are intended to "clarify and emphasize that expert testimony may not be admitted" unless the proponent demonstrates by a preponderance of the evidence that the proffered testimony will be helpful to the fact-finder. FED. R. EVID. 702 (Notes of Advisory Committee on 2023 Amendments). While the Committee note emphasizes that there is no need to determine that the proffered testimony would "appreciably" help the fact-finder, and that courts should not "nitpick" an expert's opinion, it reiterates district courts' gatekeeping role in ensuring the reliability of expert

testimony. Thus, questions as to the sufficiency of the basis for an expert's opinion and the application of his methodology go to admissibility rather than weight.

In addition to the general principles provided by Rule 702, Rule 704 provides that, in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," because such matters are for the finder of fact. FED. R. EVID. 704(b). The Tenth Circuit has observed that Rule 704(b) is narrow, and "only prevents experts from expressly stating the final conclusion or inference" regarding a defendant's mental state. *United States v. Richard*, 969 F.2d 849, 854 (10th Cir. 1992). Experts may testify to "facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state," *id*. at 855, but they may not give testimony that, if believed, "necessarily dictates the final conclusion" that the defendant "possessed the requisite *mens rea*." *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000); *accord United States v. Becknell*, 601 F. App'x 709, 714 (10th Cir. 2015) (unpublished).

## ANALYSIS

The prosecution, through its Motion to Strike Anticipated Testimony of Defendant's Proffered Expert Uzoma Eze and Request for Daubert Hearing, ECF No. 146, sought to prevent Mr. Uzome Eze from offering expert testimony at trial. Initially, the prosecution argued that Mr. Eze is not qualified, as a threshold matter, under Rule 702. In its supplemental memorandum filed after the *Daubert* hearing, however, the prosecution conceded that Mr. Eze's experience qualifies him to offer some of the opinions initially proffered by Mr. Uchendu. ECF No. 185 at 5. These opinions are as follows:

(a) There exists a large parallel market or black market of dollar-to-naira exchange due to restrictive monetary policy of the Nigerian Central Bank;

    (b) In the Nigerian diaspora, even people who have earned funds through legitimate means often use this informal market to transfer those funds;

    (c) It is not uncommon for scammers known as Yahoo Boys to trick unwitting people into transmitting criminal proceeds; and

    (d) It is not unusual for a Nigerian in the Nigerian diaspora to be aware that there are potential scams and to be aware of the meaning of the term "Ali."

*Id*.

The prosecution's concessions are well-advised. The court is cautious not to let its gatekeeping function under the Federal Rules of Evidence unnecessarily throttle Mr. Uchendu's right to defend himself from criminal charges. Further, the standards for expert qualification are much more liberal than the prosecution initially seemed to suggest. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995); *accord Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993) (noting the "liberal thrust" of Federal Rules of Evidence). And, as the Tenth Circuit has suggested, "there is a strong and undeniable preference for admitting *any evidence* having *some potential* for assisting the trier of fact[.]" *United States v. Johnson*, 731 F. App'x 638, 656 (10th Cir. 2018) (internal quotation marks omitted and emphasis added) (unpublished).[1] In

---

[1] In *Gomez*, the Tenth Circuit held that the district court's election to permit the testimony of a proffered witness who had only a minor in Spanish and a proselytizing mission in South America under his belt was not an abuse of discretion. 67 F.3d at 1526; *accord United States v. Aguilera-Meza*, 329 F. App'x 825, 833 (10th Cir. 2009) (finding two years of formal Spanish education and some law enforcement experience sufficient to merit expert qualification). Indeed, it is not required that experts be "blue-ribbon practitioners." *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006) (citing *United States v. Rose*, 731 F.2d 1337, 1346 (8th Cir. 1984)).

Further, expert testimony (and expertise generally) is highly contextual. If Mr. Eze were not permitted to testify as to some opinions at issue—for example, the existence and nature of a parallel money market between the United States and Nigeria—it strains the imagination to conjure what such an expert might look like. As to at least some of the opinions proffered, the court is satisfied

5

short, after hearing Mr. Eze's testimony at the *Daubert* hearing, the court is persuaded that the four opinions identified in the prosecution's supplemental memorandum clear the bar for admissibility set by Rule 702.

### A. Opinion 1: There is a Legitimate Parallel Market for Sending Funds to Nigeria

The court turns next to the four opinions outlined in Mr. Uchendu's initial notice. The first opinion identified by the Defense is that there is a "legitimate" parallel market for sending funds to Nigeria, which is used by Nigerian-Americans to circumvent Nigeria's closed currency system. ECF No. 126 at 2. The prosecution's first two concessions offered in its supplemental memorandum largely concede the admissibility of Mr. Eze's first proffered opinion.[2] Further, Mr. Uchendu has agreed that Mr. Eze will not testify that the market as a whole is "legitimate." ECF No. 198 at 6. Thus, the parties now appear to be generally in agreement as to the range of testimony Mr. Eze may offer regarding the first proffered opinion.

### B. Opinion 2: Criminals in Nigeria Exploit this Parallel Market

Mr. Eze's second opinion is that criminals "exploit this parallel market." ECF No. 126 at 4. Mr. Eze will be allowed to speak to known, demonstrable fraudulent activity and operations on the parallel market, including as to empirical facts regarding the size and prominence of such activities or networks known to have been adjudicated unlawful. This is consistent with the

---

that Mr. Uchendu has demonstrated that it is more likely than not that Mr. Eze would be helpful to the jury as it considers Mr. Uchendu's culpability. *See* FED. R. EVID. 702; *Johnson*, 731 F. App'x at 656 (unpublished).

[2] That is, that (a) there exists a large parallel market or black market of dollar-to-naira exchange due to restrictive monetary policy of the Nigerian Central Bank; and that (b) in the Nigerian diaspora, even people who have earned funds through legitimate means often use this informal market to transfer those funds (citing *Schneider*, 704 F.3d at 1294).

prosecution's concession that Mr. Eze ought to be permitted to testify that "[i]t is not uncommon for the scammers known as Yahoo boys to trick unwitting people into transmitting criminal proceeds." ECF No. 185 at 5-6.

### C. Opinion 3: Innocent Money Mules Use Their Own Names and Accounts

Mr. Eze's third opinion is that innocent persons exploited as dupes in this parallel market are significantly more likely to use their own names and accounts in transferring funds. ECF No. 126 at 5; *accord* ECF No. 181 at 69:16-70:6, 71:11-25. However, neither Defendant's Notice of Intent, nor Mr. Eze's testimony at the *Daubert* hearing, provided sufficient factual or empirical predicate for this opinion.

Mr. Eze's anecdotal exposure to Nigerian-Americans on the parallel market is unlikely to be representative of the parallel market as a whole. Mr. Eze volunteered that he has never worked with or spoken to witting money mules or scammers known as Yahoo Boys. ECF No. 181 at 52:7-21 ("I don't talk to [Yahoo Boys or the criminals exploiting the system]. I don't have a relationship with them."); *id*. at 69:19-25. Mr. Eze lacks sufficient facts or data regarding the operational tactics of scammers such as the Yahoo Boys (including the particular Yahoo Boys involved in this action) to offer reliable generalized commentary on their operations, including whether or not they are likely to use their own names or account information. *See id*. at 73-75.

While Mr. Eze will be permitted to speak to personal experience or knowledge of particular witting or unwitting money mules,[3] he will not be allowed to opine as to the general characteristics or practices of unwitting money mules, or what is more or less probable in the market, unless he

---

[3] This assumes that Mr. Eze can provide a sufficient basis (above and beyond his say-so or personal credibility determination) for his conclusion that the individuals with whom he worked were, in fact, innocent.

can substantiate his opinion through more reliable data and information than has been presented thus far. *See* ECF No. 181 at 71:11-72:5 (Mr. Eze's testimony at the *Daubert* hearing regarding what is and is not probable on the parallel market).

At bottom, while Mr. Eze's knowledge of the parallel makes him of some help to the fact-finder, he lacks sufficient facts or data, as well as reliable principles and methods, to broadly characterize the behavior of witting and unwitting money mules generally, or the *modus operandi* of scammers such as the Yahoo Boys. Thus, although Mr. Eze will be permitted to describe activities on the parallel money market, including the fact that some persons use their real names and accounts, while others do not (e.g., describing particular instances in connection with lawful or unlawful activities), he should avoid broadly characterizing "innocent" behavior or the common behavior of scammers, given his failure to satisfy this court that such generalized characterizations would be based on sufficient facts or data or reliable principles and methods. *Id*.

### D.  Opinion 4: The Facts and Circumstances of this Case are Consistent with Uchendu Acting as an Innocent Money Mule

Mr. Eze's fourth opinion is that "facts in this case have the indicia" that Mr. Uchendu was used "as an unwitting money mule." ECF No. 126 at 5-6. However, because Mr. Eze has failed to provide a sufficient evidentiary basis for generalized characterizations of innocent or unwitting behavior (or the behavior of scammers on the parallel market), he may not offer testimony regarding what is and is not "consistent with" these generalized behavioral trends.

### E.  Miscellaneous Opinions

Additionally, Mr. Eze will not be permitted to offer his assessments on Mr. Uchendu's credibility, or any other fact, on the basis of his interviews with Mr. Uchendu. *See* ECF No. 181 at 27:3-15 (Mr. Eze's testimony at the *Daubert* hearing that he met Mr. Uchendu, and that this

meeting informed his opinions on the case). Mr. Eze is not an expert on the "whole picture" of Mr. Uchendu, *id*. at 73:21-25, nor can he serve as "an expert in [the] innocence [or] guilt" of Mr. Uchendu. *United States v. Cushing*, 10 F.4th 1055, 1081 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 813 (2022).

"[E]xpert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702." *United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) (citing *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001). And allowing Mr. Eze to testify as to Mr. Uchendu's out-of-court statements under the guise of expert testimony would serve as an improper "backdoor . . . end run around" cross-examination. *See United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012); *accord United States v. Rodriguez*, 651 F. App'x 44, 46 (2d Cir. 2016) (unpublished).[4]

### F.  Opinions in Mr. Uchendu's Supplement to Expert Disclosure, ECF No. 180

In its supplemental memorandum, the prosecution also objects to some of the opinions disclosed in Mr. Eze's supplemental disclosure. ECF No. 180. In particular, the prosecution takes issue with Mr. Eze's opinions on Mr. Uchendu's motives and intentions. ECF No. 180 at 4-6 (including Mr. Eze's proffered testimony narrating a text conversation and commenting on Mr. Uchendu's mental state regarding "tak[ing] bait," willingness to work with the scammers, etc.). And in its supplemental trial brief, the prosecution reiterates its concerns that Mr. Eze opine on

---

[4] Mr. Uchendu's initial Notice of Intent to Use Expert, ECF No. 126, references several underlying pieces of evidence, including various text or Whatsapp communications and photographs of a Mercedes, which purportedly informed Mr. Eze's opinion, and the court makes no final ruling on the admissibility of such evidence here. *Id*. at 5-6.

specific pieces of evidence, including photographs and text messages, to offer his own inferences and interpretations of the actors' conduct and mental states. *See* ECF No. 203 at 9-11.

The prosecution's arguments are well taken. While Mr. Eze may offer testimony that it is not unusual for a Nigerian in the Nigerian diaspora to be aware that there are potential scams and to be aware of the meaning of the term "Ali," it is not the province of Mr. Eze's expertise to offer his opinions on the mental state of particular participants in conversations or regarding particular pieces of evidence. Instead, it is "the jury's role to evaluate [the] evidence and decide what inferences should be drawn from it." *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 815 (8th Cir. 2017); *accord United States v. Stiger*, 413 F.3d 1185, 1193-94 (10th Cir. 2005).

## CONCLUSION & ORDER

The prosecution's Motion to Strike Anticipated Testimony of Defendant's Proffered Expert Uzoma Eze and Request for Daubert Hearing, ECF No. 146, is **GRANTED IN PART AND DENIED IN PART**. At trial, Mr. Eze will be permitted to testify as to the following:

(1) There exists a large parallel market or black market of dollar-to-naira exchange due to restrictive monetary policy of the Nigerian Central Bank;

(2) In the Nigerian diaspora, even people who have earned funds through legitimate means often use this informal market to transfer those funds;

(3) It is not uncommon for scammers known as Yahoo Boys to trick unwitting people into transmitting criminal proceeds; and

(4) It is not unusual for a Nigerian in the Nigerian diaspora to be aware that there are potential scams and to be aware of the meaning of the term "Ali."

Mr. Eze, may *not*, however, offer testimony on the following issues:

(1) The statistical odds or probability that witting versus unwitting money mules use their own names and accounts to transfer funds;

(2) Whether Mr. Uchendu's conduct, or that of the purported scammers, was "consistent with" generalized trends or patterns on the parallel market as a whole;

(3) The inferences to be drawn about individuals' intentions or mental states from particular pieces of evidence;

(4) Whether Mr. Uchendu possessed a culpable or innocent mental state based on the evidence as a whole or on the basis of Mr. Eze's interactions with Mr. Uchendu.

DATED March 8, 2024.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge